The next case on the calendar is Bonn-Winningham v. Project OHR. May it please the Court, David C. Wims, Brooklyn, New York. For all appellants in this matter, good morning, Your Honors. This is a relatively run-of-the-mill wage case, plaintiff-seeking, below in the district court, minimum wage and overtime under state and federal law in addition to additional state claims under the New York Wage Theft Prevention Act. We are here because of the Judge Ross's grant to appellees of their 12B6 motion with respect to the minimum wage and overtime claims of some of the plaintiff's appellants. And just for— Can I just ask a question about the caption at the start? Some of the plaintiffs have settled, correct? Yes. And so the ones that are before us are supposed to be the plaintiffs whose claims were dismissed by Judge Ross in December 2016. That is correct, Your Honor. Can I write about that? Because when I look at the caption, there are at least—there is at least one plaintiff that I saw, Maria Plazer, who appears to be a signatory to the settlement agreement, but she's still in the caption. And so is there a reason for that, or is it just a captioning mistake? Well, I believe it's the latter, Your Honor. There were some issues with the brief regarding the rules as applicable to the brief and the caption. So there were some— Can I ask if the parties could submit a letter within a week and just correct the caption for us?  Absolutely, Your Honor. For the purpose of analyzing this appeal, we believe that the— and there are several subgroups of plaintiffs that need to be focused on, given the large number, approximately 180 plaintiffs initially in the district court. Judge Ross granted—I'm sorry. So what we had were home care workers, all of them being home attendants or home health aides, in New York State. And they would work either 8-, 12-, or 24-hour shifts. 24-hour shifts frequently in that industry are referred to as sleep-in or live-in shifts. So all three of those terms are interchangeable. The appeal concerns some of the plaintiffs' appellants. Well, all of the appellants and some of the plaintiffs who work 24-hour shifts. And with respect to those plaintiffs, Judge Ross, essentially for all the plaintiffs below, we pled that they worked, quote, unquote, worked either 8-, 12-, or 24-hour shifts. And so Judge Ross found that that pleading was inadequate with respect to the 24-hour plaintiffs on their minimum wage claims and on the overtime claims for 24-hour plaintiff appellants who worked either only two or only three 24-hour shifts per week. So she divided the 24-hour plaintiffs into three groups. Those who did—had pled weeks in which they did two 24-hour shifts, three, or four. Now, we believe where she departed from the applicable standard on the 12B6 motion, which has been sort of expounded upon from the rule itself by the Second Circuit in the three cases that were the central focus of her decision, Lundy, Nakahata, and DeJesus. And in each of those cases, what happened is the pleading was arithmetically defective. Because the overtime claims, when you added up all the hours that were pled, the plaintiffs could not get to over 40 hours, and therefore it failed under that trio of cases. Here, interestingly, that's not the case. We pled that they worked through the entirety of their shifts and were required to attend to and monitor their patients or consumers throughout the shift at all times. And what Judge Ross essentially did was incorporate this industry custom practice or rule in the home health aid industry in New York that says 24-hour shift employees will be paid presumptively for 13 hours of a 24-hour shift, and the other 11 would be attributable to eight for sleep and three for meals. The operative complaint clearly indicated not only did my clients work through the entirety of their respective shifts, but also that the break and meal periods were not had by these employees, and thus they brought this suit. And the reason I'm saying that is because there are care plans that are assigned to a consumer in this industry. Those consumers who have needs that require attendance around the clock are those who are assigned 24-hour home care workers or home attendants. So that they may not sleep in the traditional sense as you or I would, simply because they have to do nighttime medications, they have to monitor the consumers throughout the evening and break periods, well, alleged break periods. The problem here, for instance, those who pled, they did two sleep-in shifts. To get over the 40-hour threshold, you need to plead an additional 15 hours of work. And maybe there wasn't, maybe you say I had to work through mealtimes on, you know, X number of occasions, or I was interrupted in my sleep during the night and I didn't get five hours of uninterrupted sleep. But instead, this was a sort of broad brush. All of them worked all the time. And that's, I mean, I agree with you on it. That's a central focus. And the applicable standard on a 12B6 motion requires Judge Ross or any district court in that situation to take the facts as pled. She did that with respect to the 8- and 12-hour plaintiffs. She did not with respect to the 24-hour plaintiffs. She said she incorporated this industry standard, and most importantly, thereby looking beyond the four corners of the complaint, which is not allowed pursuant to the applicable standard. So she's now treated the 8- and 10-hour shift workers substantively differently than the 24-hour workers, even though the allegations are identical. If I understand correctly, these workers, if during their sleep, if while they're sleeping they're taking the medication, they're not taking the medication. If while they're sleeping, during using their allocated sleeping time or using their allocated eating time, if the person they're caring for has a disturbance, needs care, whatever, needs to go to the bathroom, whatever, they need to interrupt their sleep, need to interrupt their whatever they're doing, the meal, and go and take care of that or clean up a mess that's been made or whatever. Is that correct? That's correct, except for we take issue with the supposition that they were, in fact, ever asleep or on those break periods, because frequently during the meal, the quote-unquote meal periods, they would eat with their consumers. But even assuming that they are sleeping at a time that they should be sleeping, their job requires them to interrupt that sleep. Absolutely. And clean up that meal if it's a separate meal. Absolutely, Your Honor, and that is why those... As I understand the arithmetic, at least with respect to the ones who are on three shifts, who are on three consecutive 24-hour shifts, that they only need to have one hour plus of interruption of any sleep that they're supposed to be getting or meals, that they're supposed to be getting to be into overtime. That's correct, if and only if you make the assumption that the district court did, that they only worked 13 hours. That's not what was pled. So she incorporated this standard. She departed from the standard. Even under that assumption, there's only a one-hour cushion. Correct. 39 hours of three 13-hour allowable work shifts and 40 hours allowable for the whole week before you're into overtime. Correct. So for any particular week, right. And to support that assumption for any particular week that was pled in the complaint, you'd have to believe that the plaintiffs, contrary to what they pled, received all three meal periods each day and a full eight hours of sleep. Were they able to do that, get the full eight hours of sleep and all the meal periods? Those consumers would not need 24-hour home attendance. So the, it's my opinion that at the least... Why would you even have the rule if they didn't? I mean, the rule envisions the fact that home health aides have to be with the individual and stay with the individual, and that the person that they're caring for at times sleeps, at times is doing something when they can get their meal. So the rule anticipates that it's 24 hours that they're there, but of that 24 hours, they're not working all the time. The objection wasn't the problem that Judge Roth said, was that you didn't really identify with any kind of particularity when the rule was interrupted because of the special needs of the individual being cared for? Well, that's, yes, Your Honor, and the reason we didn't do that is, like I said... I mean, you blanketly said this applied to all of these people and they all worked overtime, they all worked 24 hours. Correct. Does that seem plausible to you that it always happened? No, it wouldn't be plausible if I were alleging, may I finish? It wouldn't be plausible, Your Honor, if I were alleging that each of my clients who worked 24-hour shifts never got a minute break or rest. But what we're talking about, what was pled in the fourth amended complaint, the operative complaint, were for two or three week periods. So we allege that for those weeks identified, pursuant to the trio of Second Circuit cases, we identified specific weeks and said during those weeks, these people worked eight, 12, or 24-hour shifts. She took it as true with respect to the eight and 12. She had to resort to something outside the four corners of the complaint in order to conclude something different on the 24 hours. We think there is where the departure from the standard occurred. You reserve some rebuttal time? Yes, Your Honor. I'll have a seat. Thank you. Good morning, Your Honors. May it please the Court, my name is Shannon Nazaro from Picard & Abramson on behalf of Project O.H.R. Defendant Apelli. I would just like to first state that this is not the run-of-the-mill FLSA case. We have here a situation where we have some 177 plaintiffs in the caption. Ordinarily you would see a situation where you have some identified named plaintiffs pleading as a class or collective action. But here we have a number of plaintiffs who we really don't have any allegations for. We have a judge who saw this, allowed plaintiff to re-plead. This is their, actually, third amended complaint, even though it's called the fourth amended complaint. And the plaintiffs amended their complaint three times. Judge Ross asked for their last and best, and this is what we are given. And the Court had given plaintiffs every opportunity to plead what would be a, you know, presumably if they had stated a claim, they would have stated and identified the insufficient detail, the length and frequency of the unpaid work. However, we do not have that here. We are given broad allegations that plaintiffs had rarely received uninterrupted sleep. And in this situation where we have a complaint that basically provides us with a list of 177 names, a spreadsheet with just the dates of employment, we are left with a situation where it's rife with the potential for abuse. And the ability to try to circumvent the collective and class action principles in this circuit. And I just want to address a few. If I can just make sure I understand the math, for those who are pleading that they worked two sleep-in shifts in a given week, they would need in that week to plead there were 15 hours in order to get over the 40-hour threshold. They would need to say 15 hours, I missed my meals or had to get up in the middle of the night, so I missed that time that was supposed to be my own. But for the people that pled three sleep-ins, it really is only one or two. It's a small number of hours. So is there a difference between whether those two groups in terms of whether there's enough pled in this complaint? I think the most important thing to look at here is the Department of Labor's opinion letter and the precedent in the New York State Court of Appeals in Moreno and Andreeva, which was recently decided in March of this year. And the rule there, which I want to distinguish, is that it's not that plaintiffs need to have eight solid days or eight solid hours of sleep, they are entitled to eight hours of sleep, including five hours of uninterrupted sleep and three meal breaks. And so the difference here is not, okay, there's some sort of interruption and now the whole thing is out. The difference here is that they only need to have five hours of uninterrupted sleep, which is... with this kind of work, there's nothing implausible about their never getting five hours of uninterrupted sleep. Because if the person they're taking care of is an elderly, infirm person who doesn't sleep well, who needs to go to the bathroom many times during the night, these are disabled people. And five hours of uninterrupted sleep is quite a lot of uninterrupted sleep. And there's nothing the least bit implausible about one in that kind of a job not getting it. And as Judge Livingston was just saying, between the 39 hours of work that they're required to do in a three-hour shift and 40, that's just a one-hour difference. So if there was one hour plus of their having to work more than was anticipated, they're into overtime. Isn't that right? Is that implausible that there'd be one hour of extra? Well, first of all, I would like to note that with respect to this particular complaint, the fourth-minute complaint that was set forth by plaintiffs, they do not plead that they received less than five uninterrupted hours of sleep. And it's really important to note that, because they never pled that particular allegation. And... ...